IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| STANLEY JOSEPH CROWGEY, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | CASE NO. 13-62278 |

| | | |
|---|---|---|
| DON FOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ADVERSARY PROCEEDING |
| v. | ) | NO. 14-06002 |
| | ) | |
| STANLEY JOSEPH CROWGEY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The matters before the Court are the Motion for Summary Judgment ("Motion") filed by Don Fox, individually, and d/b/a Big Giant Warehouse (collectively "Plaintiff"), by counsel, and the Response thereto filed by Stanley Joseph Crowgey ("Defendant" or "Debtor"), by counsel. A hearing was held on September 9, 2014. On that same date, the matter was taken under advisement. For the reasons stated herein, the Plaintiff's Motion for Summary Judgment is granted.

### FINDINGS OF FACT

Don Fox, the Plaintiff, filed this adversary proceeding by complaint on January 23, 2014, seeking to except from discharge his prepetition state court judgment against the Debtor, Stanley

Joseph Crowgey, in the amount of $634,395.73 under 11 U.S.C. § 523[1] of the Bankruptcy Code. The Plaintiff, by counsel, filed the Motion on August 8, 2014 and the Memorandum in Support of the Plaintiff's Motion on August 29, 2014.  On August 22, 2014, the parties filed a Stipulation of Facts,[2] attaching as exhibits a copy of the Plaintiff's State Court Petition in the District Court of Oklahoma County, Oklahoma ("Oklahoma State Court"); the Debtor's Answer, Counterclaim and Third Party Petition; an Order regarding the withdrawal of the Defendants' counsel in that case; and the Journal Entry of Judgment, which awards the Plaintiff $634,395.73 in compensatory and punitive damages.  The Debtor, by counsel, filed a Response to the Motion on August 25, 2014.  A hearing on the Motion and the Response thereto was held on September 9, 2014, where the Debtor and counsel for both parties appeared.

Prior to Debtor's bankruptcy filing, the Plaintiff's limited liability company, Big Giant Warehouse, L.L.C.,[3] sued the Debtor and two corporate entities with which the Debtor was formally associated, known as K.I.N.E. Ministries, Inc. and K.I.N.E. Services, L.L.C. (collectively "Defendants"), alleging, among other things, fraud, common-law fraud, and misrepresentation in Oklahoma State Court.  Stip. ¶ 1.  The Complaint alleges that over a twenty-year period, Debtor was employed by Plaintiff a cumulative of seven years and that during this time, Debtor was trained as a product locator of wholesale goods and was therefore entrusted with trade secrets, confidential and proprietary information, including a customer list that the

---

[1] In less than pristine drafting, the Complaint filed herein was filed only under "11 USC § 523," not referencing which subsection of Section 523 the Plaintiff was proceeding under.  The Defendant filed a response for a more definite statement, and at the pre-trial conference held March 20, 2014, all parties concurred that Plaintiff was proceeding under 11 U.S.C. § 523(a)(2), and an Order was entered to that effect.

[2] References to the Stipulation of Facts are hereafter referred to as "Stip."  References to the Oklahoma State Court Petition (hereafter "Complaint") attached to the Stipulation of Facts are referred to as "Compl."

[3] At some point in the Oklahoma State Court litigation, the Plaintiff was re-identified as "Don Fox, individually, and d/b/a Big Giant Warehouse."  Stip. ¶ 3, Ex. C.

2

Plaintiff spent over forty-seven years compiling. Compl. ¶¶ 2, 3, 11, 12. The Complaint further alleges that in July 2000, while still employed with Plaintiff, Debtor formed non-profit charitable organizations, K.I.N.E. Ministries, Inc. and K.I.N.E. Services, L.L.C., which Debtor used to compete against Plaintiff by misappropriating confidential and proprietary data obtained through his employment with Plaintiff. *Id.* ¶ 13. The Complaint also alleges that Defendants misrepresented the intentions of the non-profit charitable organizations, and fraudulently induced Plaintiff to permit the Defendants to use a warehouse and various machinery and equipment free of charge. *Id.* ¶¶ 4, 5, 17. The Complaint further alleges that Debtor breached his fiduciary responsibility to Plaintiff and fraudulently concealed his activities by soliciting donated goods and merchandise under the guise of non-profit charitable organizations, and selling the donated items at a profit to Plaintiff's customers, and that Defendants have interfered with Plaintiff's business relations by obtaining donated goods and merchandise ordinarily distributed by Plaintiff, and selling them to Plaintiff's customers by using confidential customer lists, credit reputation, and commercial relationships. *Id.* ¶¶ 24, 28.

The Defendants, by counsel, responded to the Complaint with an Answer, Counterclaim and Third Party Petition, filed with the Oklahoma State Court on October 25, 2006. Stip. Ex. B. The Defendants denied the allegations in the Complaint, pled affirmative defenses, and listed various allegations against Plaintiff in the Counterclaim and Third Party Petition. *Id.* In its Counterclaim and Third Party Petition, Defendants alleged, among other things, that Plaintiff tortiously interfered with Defendants' business relations by contacting various entities with whom Defendants conduct business and falsely represented the nature of Defendants' business practices. *Id.* ¶ 25. In addition, Defendants alleged that Plaintiff committed libel and/or slander by maliciously misrepresenting the true purpose and intent of Defendants' business to third

parties. *Id.* ¶ 26. The Counterclaim and Third Party Petition further alleges that Plaintiff also breached its agreement to voluntarily give equipment to Defendants for its use by seeking to recover money for those items that Plaintiff voluntarily donated or gave to Defendants at no charge. *Id.* ¶ 30.

By Order filed on August 30, 2010, the Oklahoma State Court granted Defendants' counsel's Motion to Withdraw. Stip. Ex. C. The Order also directed that the Defendant Stan Crowgey obtain new counsel within thirty days or he will be deemed to represent himself *pro se* and directed that the Defendants K.I.N.E. Ministries, Inc. and K.I.N.E. Services, L.L.C. obtain new counsel within thirty days as required by Oklahoma statute. Further, the Order stated that "[f]ailure by Defendants to defend the case may result in a dismissal of the case without prejudice or default judgment entered against the Defendants." *Id.* The Order also provided that "notice and service of future filings" may be served on Defendants at an address in Roanoke, Virginia. *Id.* The parties stipulate that the Defendants did not obtain new counsel at any time following the Order. Stip. ¶ 4.

The Oklahoma State Court entered a Journal Entry of Judgment on April 15, 2013 stating that the court "granted default judgment against the Defendants" based on Plaintiff's Motion for Default Judgment, and held an evidentiary hearing on damages on April 11, 2013. Stip. Ex. C. The Journal Entry of Judgment also states that "notice was given of the evidentiary hearing date" but "Defendants did not appear and no responsive brief was filed by or on behalf of Defendants." The Oklahoma State Court found that Plaintiff is entitled to $334,395.73 in compensatory damages after "review[ing] the brief and having received supporting evidence." *Id.* Further, the Oklahoma State Court concluded, "evidence is sufficient to support a finding for punitive damages as the Defendants acted intentionally, with malice and in reckless disregard to the rights

4

of others. Defendants received the money and property at issue in this litigation by false representations and by fraud." *Id.* Accordingly, the Oklahoma State Court also awarded the Plaintiff punitive damages in the amount of $300,000.00. *Id.*

The parties stipulate that the Oklahoma State Court judgment was not appealed and is a final judgment. Stip. ¶ 7. Further, the parties stipulate that the Oklahoma State Court judgment was recorded in Bedford County, Virginia Circuit Court on August 28, 2013 ("Virginia Judgment"), pursuant to the Uniform Enforcement of Foreign Judgments Act. The Defendants did not take any of the actions set forth in Virginia Code § 8.01-465.4 to challenge the Virginia Judgment, and the Virginia Judgment is final and enforceable. *Id.* ¶¶ 8-9. Execution of the Virginia Judgment was commenced by garnishment on October 29, 2013. On November 5, 2013, the Debtor filed for relief in this Court under Chapter 7 of the Bankruptcy Code. *Id.* ¶ 11.

The parties also stipulate that in addition to the Oklahoma State Court proceeding, Plaintiff also filed a companion case against Fox Wholesale, L.L.C., Fox Wholesale, and Tim Fox, who participated in the sale and brokering of goods with Defendants' enterprise in Oklahoma. This case was tried before a jury in the District Court of Oklahoma County and the jury found in favor of the Plaintiff, but did not award any damages against the defendants in that case. *Id.* ¶ 12.

In its Memorandum in Support of its Motion, the Plaintiff correctly asserts that Oklahoma preclusion law applies, and argues that the issues underlying its complaint on nondischargeability were actually litigated, as this is not a true default situation. In addition, the Plaintiff contends that the Oklahoma State Court's Journal Entry of Judgment establishes that the issue was actually litigated because the Oklahoma State Court took and considered evidence and

5

the Debtor was actively involved inasmuch as he hired an attorney, answered the suit, and sought affirmative relief by filing a counterclaim in the Oklahoma State Court proceeding.

However, the Debtor, in its Opposition to Plaintiff's Motion, asserts that the record does not establish that the parties actually litigated the issues relating to the Plaintiff's nondischargeability complaint in the Oklahoma State Court proceeding. Rather, the Debtor, citing to Virginia case law and not mentioning any Oklahoma cases, argues that collateral estoppel does not apply in this case because neither the default judgment nor the record before this Court establishes that the issues were actually litigated. Further, the Debtor argues that even if he is collaterally estopped from litigating the issues underlying the Plaintiff's nondischargeability complaint, the punitive damages award of $300,000.00 should not be nondischargeable because it falls under 11 U.S.C. § 523(a)(6) rather than Section 523(a)(2), and the Plaintiff agreed to only proceed under Section 523(a)(2).

## CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984 and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. This Court further concludes that consideration of the dischargeability of particular debts is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).

Section 727 of the Bankruptcy Code allows a debtor to obtain a "fresh start" by providing that a debtor shall receive a discharge from all debts arising prior to the debtor's Chapter 7 filing, except for some debts listed in Section 523. 11 U.S.C. § 727(b). Importantly, the Supreme Court held that this "fresh start" is limited to the "honest but unfortunate debtor." *Grogan v.*

*Garner*, 498 U.S. 279, 286-87 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)). In the instant case, the Plaintiff seeks to except its Oklahoma State Court judgment against the Debtor in the amount of $634,395.73 from discharge pursuant to 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) excepts from discharge any debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A).

The Bankruptcy Code defines a "debt" as "liability on a claim." 11 U.S.C. § 101(12). A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5)(A). Plaintiff's Oklahoma State Court judgment falls under the definition of a "debt" under the Bankruptcy Code.

In order to establish that a claim is nondischargeable under Section 523(a)(2)(A), a creditor must prove all five elements of fraud: (1) a false representation; (2) knowledge that the representation was false; (3) intent to deceive; (4) justifiable reliance on the representation; and (5) proximate cause of damages. *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 218 (4th Cir. 2007). A creditor seeking to except his debt from discharge in bankruptcy "must establish by a preponderance of the evidence that his claim is not dischargeable." *Grogan*, 498 U.S. at 287 (explaining that holding a creditor to the preponderance of the evidence standard "reflects a fair balance" between protecting the interests of a debtor in bankruptcy and protecting the interests of victims of fraud). "Exceptions to the discharge are to be narrowly construed in favor of the debtor and against the creditor." *Frank & Barbara Broyles Legacy Found. v. Nichols (In re Nichols)*, 509 B.R. 722, 724 (Bankr. N.D. Okla. 2014) (footnote omitted).

7

Significantly, while not phrased identically, the elements that a plaintiff must prove under Section 523(a)(2)(A) as listed above are "substantially similar to actual fraud as defined under Oklahoma law." *Speedsportz, LLC v. Lieben (In re Lieben)*, No. 11-77399-JRS, Adversary No. 11-05712-JRS, 2013 WL 5183503, at *6 n.6 (Bankr. N.D. Ga. Aug. 21, 2013) (citing *Croslin v. Enerlex, Inc.*, 308 P.3d 1041, 1045 (Okla. 2013)). Under Oklahoma law, actual fraud is defined as "the intentional misrepresentation or concealment of a material fact, with an intent to deceive, which substantially affects another person." *Croslin*, 308 P.3d at 1045; *see also Hitch Enters. Inc. v. Cimerex Energy Co.*, 859 F. Supp. 2d 1249, 1259 (W.D. Okla. 2012). Further, Oklahoma law establishes that "[t]o be actionable, both actual fraud and constructive fraud require detrimental reliance by the person complaining." *Howell v. Texaco Inc.*, 112 P.3d 1154, 1161 (Okla. 2004). Thus, the threshold findings for an actual fraud claim in Oklahoma can support a claim for non-dischargeability under Section 523(a)(2)(A).

Plaintiff sued the Defendants in Oklahoma State Court and obtained a default judgment in the amount of $634,395.73 based on, among other things, the Defendants' "fraud," "common-law fraud," and "misrepresentation." Stip. ¶ 1. Plaintiff asserts that the Oklahoma State Court judgment collaterally estops the Debtor from arguing that the $634,395.73 debt is dischargeable in his bankruptcy case.

It is well established that the doctrine of collateral estoppel or issue preclusion may apply in a bankruptcy case. *See, e.g.*, *Nelson v. Tsamasfyros (In re Tsamasfyros)*, 940 F.2d 605, 606 (10th Cir. 1991). "State court judgments can collaterally estop the litigation of issues in adversary proceedings in federal bankruptcy court." *Song v. Duncan (In re Duncan)*, 448 F.3d 725, 728 (4th Cir. 2006) (citing *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 19 (4th Cir. 1997)). In order to determine whether a state court judgment should be given collateral estoppel

effect, courts "must apply the relevant state law of collateral estoppel." *Id.* (citing *Ansari*, 113 F.3d at 19). Accordingly, this Court must look to Oklahoma law to determine whether the Oklahoma State Court judgment can be given preclusive effect in this case.

Under Oklahoma law, the doctrine of collateral estoppel will preclude relitigation of factual issues if: "(1) the issue to be precluded is the same as the one litigated in the earlier state court proceeding; (2) the issue was actually litigated in the prior proceeding; and (3) the state court's determination of that issue was necessary to the resulting final and valid judgment." *Tsamasfyros*, 940 F.2d at 606-07; *see also Nealis v. Baird*, 996 P.2d 438, 458-59 (Okla. 1999). "Under the doctrine of issue preclusion, once a court has decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate the issue in a suit brought for a different claim." *Nealis*, 996 P.2d at 458-59.

The second requirement is the crux of the issue in this case -- was the issue of the Debtor's "false misrepresentation" or "fraud" actually litigated in the Oklahoma State Court proceeding? The Debtor asserts that the judgment rendered by the Oklahoma State Court was a default judgment, and the issue was therefore not actually litigated. The Plaintiff, however, argues that this is not a true default situation, and the issue was actually litigated in the Oklahoma State Court proceeding because the Debtor had a full and fair opportunity to litigate. However, even though the Debtor answered and filed a counterclaim, he chose not to actually litigate further, and supporting evidence was received and considered by the Oklahoma State Court in his absence prior to entering its Journal Entry of Judgment.

In the Oklahoma State Court's Journal Entry of Judgment, the Court noted that it held "an evidentiary hearing on damages," where the Plaintiff and the Plaintiff's counsel appeared, but the Defendants did not appear. Stip. Ex C. After "review[ing] the brief and having received

supporting evidence" at the damages hearing, the Court found that the Plaintiff was entitled to $334,395.73 in compensatory damages, and also awarded the Plaintiff $300,000.00 in punitive damages based on a finding that "the Defendants acted intentionally, with malice and in reckless disregard to the rights of others" and that the "Defendants received the money and property at issue in this litigation by false representations and by fraud." *Id.*

The Oklahoma Supreme Court has held that:

> An issue is actually litigated and necessarily determined if it is properly raised in the pleadings, or otherwise submitted for determination, and judgment would not have been rendered but for the determination of that issue. The doctrine may not be invoked if the party against whom the earlier decision is interposed did not have a "full and fair opportunity" to litigate the critical issue in the previous case. For invocation of issue preclusion there need not be a prior adjudication on the merits (as is often the case with res judicata) but only a final determination of a material issue common to both cases.

*Okla. Dep't of Pub. Safety v. McCrady*, 176 P.3d 1194, 1199 (Okla. 2007) (footnotes omitted) (emphasis omitted); *see also Nealis*, 996 P.2d at 458 (Okla. 1999).

While some courts find that default judgments should not support a finding of collateral estoppel, others find collateral estoppel fully applicable in certain circumstances. *See, e.g.*, *McCart v. Jordana (In re Jordana)*, 221 B.R. 950, 953 (W.D. Okla. 1998), *aff'd*, 232 B.R. 469 (B.A.P. 10th Cir. 1999). For example, where a party "has engaged in serious misconduct, such as refusing to comply with discovery and obstructing the actual judicial process of litigation," applying collateral estoppel is appropriate. *Jordana*, 221 B.R. at 954 (citations omitted). Moreover, "if the losing party has significantly participated in the previous action, such as by engaging in discovery over a period of sixteen months, then collateral estoppel will apply." *Id.* (citing *United States v. Gottheiner (In re Gottheiner)*, 703 F.2d 1136, 1140 (9th Cir. 1983)).

Like *Gottheiner*, the Defendants, including the Debtor, "significantly participated" in the previous action because they were represented by counsel in the Oklahoma State Court

10

proceeding, seemingly for a period of almost four years. *See Gottheiner*, 703 F.2d at 1140. Therefore, this is not a "true" default situation, in which a defendant "fail[s] to file an answer or to take any steps to defend the action." *Building Commc'ns, Inc. v. Rahaim (In re Rahaim)*, 324 B.R. 29, 37 (Bankr. E.D. Mich. 2005) (citation omitted). Rather, in this case, the Debtor did file an Answer to the Plaintiff's Oklahoma State Court Complaint, pled affirmative defenses, and laid out his own allegations in a Counterclaim. *Gottheiner* explained that in that case, the debtor "did not give up from the outset. For sixteen months he actively participated in litigation." *Gottheiner*, 703 F.2d at 1140. The court stated that just because "after many months of discovery, [the debtor] decided his case was no longer worth the effort," and decided not to oppose a motion for summary judgment, this did not mean that the debtor did not "ha[ve] his day in court." *Id.* Thus, *Gottheiner* held that the issue was "actually litigated" in the lower court and collateral estoppel did apply. *Id.* at 1141. Similarly, the Debtor in this case filed an Answer, Counterclaim and Third Party Petition in the Oklahoma State Court proceeding on October 25, 2006, and the Oklahoma State Court did not grant the Defendants' counsel's Motion to Withdraw until August 2010, nearly four years later.

The U.S. Bankruptcy Appellate Panel for the Tenth Circuit ("B.A.P."), although applying Georgia law, noted that "numerous courts" have held that the "actual litigation requirement may be satisfied by substantial participation in the adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so." *Cherry v. Neuschafer (In re Neuschafer)*, No. 11-10282, Adversary No. 11-05103, 2014 WL 2611258, at *7, 2014 Bankr. LEXIS 2582, at *29 (B.A.P. 10th Cir. June 12, 2014) (citing *FDIC v. Daily (In re Daily)*, 47 F.3d 365, 368 (9th Cir. 1995); *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1323-25 (11th Cir. 1995); *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210,

11

215-16 (3d Cir. 1997); *Hebbard v. Camacho (In re Camacho)*, 411 B.R. 496, 501-04 (Bankr. S.D. Ga. 2009)). In *Neuschafer*, the B.A.P. explained that the debtor "actively participated in the [Georgia state court proceeding] for a year—he answered the complaint, filed a counterclaim, and participated in discovery. After his attorney's withdrawal, the debtor chose not to participate in the state trial by failing to keep the state court informed of his current address and his decision to stop monitoring the [state court proceeding]." *Id.*

As stated above, the Defendants in the Oklahoma State Court proceeding, including the Debtor, filed an Answer, Counterclaim and Third Party Petition, and the Defendants' counsel did not withdraw until almost four years later, in August 2010. In the same Order granting the Motion to Withdraw, the Oklahoma State Court ordered that the Defendants obtain substitute counsel and informed the Defendants that "[f]ailure by the Defendants to defend the case may result in a dismissal of the case without prejudice or default judgment entered against the Defendants." Stip. Ex. C. Therefore, the Defendants, including the Debtor, were fully aware of their obligation to obtain new counsel and were made aware of the possibility of a default judgment if they failed to do so. Nevertheless, the Defendants did not obtain new counsel. Further, in the Defendants' absence, the Oklahoma State Court "received supporting evidence" before rendering its judgment. Therefore, this Court finds that the application of collateral estoppel is appropriate in this case.

Accordingly, this Court holds that the entire $634,395.73 debt is nondischargeable under Section 523(a)(2)(A). After holding an evidentiary hearing on damages, reviewing the brief, and receiving supporting evidence, the Oklahoma State Court found that "the Plaintiff is entitled to compensatory damages in the amount of $334,395.73" and concluded that in addition, "the evidence is sufficient to support a finding for punitive damages as the Defendants acted

intentionally, with malice and in reckless disregard to the rights of others. Defendants received the money and property at issue in this litigation by false representation and by fraud." Stip. Ex. C. Accordingly, the Oklahoma State Court also awarded the Plaintiff $300,000.00 in punitive damages.

The Debtor argues in his Opposition to the Plaintiff's Motion that if he is collaterally estopped, only the $334,395.73 in compensatory damages should be determined to be nondischargeable because the punitive damages award falls under Section 523(a)(6), and the Plaintiff has stipulated that he is only proceeding under Section 523(a)(2). However, the Debtor makes this argument without citing any law to support it, and this argument is unpersuasive. Several courts, including the Supreme Court, have concluded that punitive damages can be excepted from discharge under Section 523(a)(2)(A) rather than under Section 523(a)(6) as long as the damages stem from "situations where the debtor has fraudulently acquired money, property, or services from the creditor." *See, e.g.*, *Nunnery v. Rountree (In re Rountree)*, 330 B.R. 166, 171 (E.D. Va. 2004), *aff'd*, 478 F.3d 215 (4th Cir. 2007) (citing *Cohen v. De La Cruz*, 523 U.S. 213 (1998)); *see also Nemec v. Bolzle (In re Bolzle)*, 158 B.R. 853, 856 (Bankr. N.D. Okla. 1993) (holding that "punitive damages are excepted from discharge under 11 U.S.C. § 523(a)(2)(A) along with actual damages"). In *Cohen*, the Supreme Court held that Section 523(a)(2)(A) "prevents the discharge of *all liability* arising from fraud," and concluded that the entire debt, including treble damages, attorney's fees, and costs were nondischargeable in bankruptcy. *Cohen*, 523 U.S. at 215 (emphasis added). The Supreme Court explained that "[t]he most straightforward reading of § 523(a)(2)(A) is that it prevents discharge of 'any debt' respecting 'money, property, services, or . . . credit' that the debtor has fraudulently obtained, including treble damages assessed on account of the fraud." *Id.* at 218 (citation omitted)

(explaining that "[o]nce it is established that specific money or property has been obtained by fraud, however, 'any debt' arising therefrom is excepted from discharge"). The Supreme Court noted that it is "unlikely that Congress . . . would have favored the interests in giving perpetrators of fraud a fresh start over the interests in protecting victims of fraud." *Id.* at 223 (quoting *Grogan*, 498 U.S. at 287). Here, the Journal Entry of Judgment made an unambiguous finding that the Debtor "received the money and property at issue in this litigation by false representations and by fraud." Therefore, this Court holds that both the compensatory damages and the punitive damages awards are nondischargeable in Debtor's bankruptcy case.

## CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment is granted, and this Court determines that the Oklahoma State Court Journal Entry of Judgment in Case No. CJ-2006-7578 dated April 15, 2013 in the amount of $634,395.73 is nondischargeable under 11 U.S.C. § 523(a)(2)(A). An Order to such effect shall be entered contemporaneously herewith.

Decided this 24th day of September, 2014.

_____
UNITED STATES BANKRUPTCY JUDGE

14